THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ALLIED HEALTH CARE PRODUCTS INC., WILLIAM DOERING and RAYMOND RINGER, Respondents.

Third Department, January 30, 1992

## APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Jo M. Katz, Ingrid K. Hansen, Peter H. Schiff* and *Clive Marrick* of counsel), for appellant.

*Dickstein, Shapiro & Morin (Barry Levine* of counsel), *Rapport, Meyers, Griffen & Whitbeck, Burditt, Bowles & Radzius,* and *Schulman, Treem, Kaminkow & Gilden* for respondents. (One brief filed.)

## OPINION OF THE COURT

LEVINE, J.

On March 8, 1988, an air pollution inspector of the State Department of Environmental Conservation (hereinafter DEC) conducted an inspection of the manufacturing plant of defendant Allied Health Care Products Inc. (hereinafter Allied) located in Columbia County. One week later, the inspector wrote to Allied's plant manager, defendant Raymond Ringer, identifying various emission sources and advising that, as an

owner of an "air contamination source (Process and exhaust or ventilation system)", Allied must obtain a certificate from DEC to operate that source. The inspector enclosed a copy of a portion of the DEC regulations pertaining to air contamination and air pollution (6 NYCRR parts 201, 212) and application forms, and asked for a reply within 10 days setting forth Allied's intended action.

Allied sent a timely response, advising that it had hired a consulting engineering firm to assist in processing its application for a certificate to operate and to "design and install a system to correct any deficiencies noted during your inspection o[f] March 8th, 1988". In late April 1988, the consulting engineering firm submitted on Allied's behalf, on a DEC printed form covering both applications for a permit to construct or modify and for a certificate to operate an air contamination source, an application for a permit to modify Allied's plant equipment to correct the problems identified in the inspection report. The application was eventually granted in April 1989.

While the application for a permit was pending, Allied's plant was also under investigation by other DEC staff. The investigation consisted of interviewing various witnesses, inspecting areas in the general vicinity of Allied's plant and, finally, in October 1988, executing a search warrant for the search of the plant and Allied's records. This investigation allegedly revealed that, as a result of the plant's operation, hazardous substances were being vented, disbursed and accumulated in Kinderhook Creek and on surrounding vegetation.

The DEC investigation culminated in a five-count Grand Jury indictment in January 1990. Defendants were charged with the crimes of endangering public health, safety or the environment in the second degree (ECL 71-2713 [5]), endangering public health, safety or the environment in the third degree (two counts; ECL 71-2712 [2], [4]), air pollution (ECL 71-2105; 6 NYCRR 211.2) and operating an air contamination source without a certificate (ECL 71-2105; 6 NYCRR 201.2 [b]). All the crimes were allegedly committed from March 1988 through October 1988.

Defendants moved to dismiss the indictment on various grounds, among which were that Allied was authorized to continue its emission-producing operations by virtue of the provisions of 6 NYCRR 201.2 (c) and by express permission of DEC officials; that the statutory and regulatory framework

allegedly violated by defendants was so vague and lacking in fair warning of what conduct was prohibited as to deny them due process; that the evidence before the Grand Jury was insufficient as a matter of law to support the charges; and that the charges should be dismissed in the interest of justice because of several alleged acts of prosecutorial misconduct. County Court granted the motion to dismiss all counts, but solely on the ground that the conduct alleged in the indictment was authorized under 6 NYCRR 201.2 (c). The court declined to reach any other issue. This appeal followed.

At the outset, we note that the only ground for affirmance open for our consideration on this appeal is the propriety of County Court's ruling that 6 NYCRR 201.2 (c) legally authorized defendants' conduct *(see,* CPL 470.15 [1]; *People v Karp,* 76 NY2d 1006, 1008-1009; *People v Goodfriend,* 64 NY2d 695, 698). We thus do not reach any of the other issues raised in defendants' motion to dismiss the indictment.

█ Turning to the merits on the issue properly before us, we agree with County Court's ruling that 6 NYCRR 201.2 (c) requires dismissal of the fifth count of the indictment, charging defendants with the crime of operating an air contamination source without a certificate by willfully violating 6 NYCRR 201.2 (b). That section of the regulations provides in pertinent part that "no person shall operate an air contamination source without having a valid certificate to operate" (6 NYCRR 201.2 [b]). Section 201.2 (c), however, provides that "[a] person who owns or operates an existing air contamination source, but who does not have a certificate to operate" must apply for a certificate "and shall be permitted to continue operation of such source" until receipt of notice of disapproval of the application. Application of the literal meaning of these two subdivisions, as defendants urge upon us, appears to authorize the use of an existing air contamination source while an application for a permit to operate is pending, rather than to require, pending such approval, immediate shutdown of an operation which actually may emit only an inconsequential level of contaminants, either independently or after the installation of pollution control devices.

Attempting to avoid this exculpatory interpretation, the prosecution draws a sharp distinction between an application for a certificate to operate an air contamination source *(see,* 6 NYCRR 201.2 [b]) and one for a permit to construct or modify such a source *(see,* 6 NYCRR 201.2 [a]). The prosecution claims that the regulatory scheme envisages a two-step process under

which one can only apply for a certificate to operate after first receiving DEC approval of an application for a permit to construct or modify the contamination source. Thus, according to the prosecution's argument, until Allied received approval of its application for a permit to modify its venting system, it was not legally authorized to operate its air contamination source.

As pointed out in County Court's decision, the prosecution did not urge before that court any salient distinction in the regulations between an application for a permit to construct or modify and one for a certificate to operate a contamination source and, thus, the argument is raised for the first time on appeal. Additionally, the contention that there can be no operation of an air contamination source authorized under the regulations until a permit to construct or modify such source has been granted appears to conflict with the provisions of 6 NYCRR 201.2 (c) requiring a person who "operates an *existing* air contamination source" to apply for a certificate to operate but permitting the applicant "to *continue* operation of such source" pending disposition of the application (emphasis supplied). Moreover, it does not appear to be DEC's interpretation, as reflected in the DEC inspector's initial letter to Allied. Even if the prosecution's version was applied by DEC for regulatory purposes, however, its conflict with an at least equally plausible exculpatory interpretation of the same provisions means that the prosecution's version cannot be the basis of criminal liability for *malum prohibitum* conduct without violating due process requirements of fair warning *(see, Bouie v City of Columbia,* 378 US 347, 351-352; *State of New York v Mobil Oil Corp.,* 38 NY2d 460, 466).

■ We reach a contrary conclusion with respect to the remaining counts of the indictment. The fourth count accuses defendants of the crime of air pollution by willfully violating 6 NYCRR 211.2. ECL 71-2105 imposes criminal liability for any willful violation of ECL article 19, dealing generally with air pollution control, or of any regulation promulgated pursuant thereto. Defining a crime in terms of a willful violation of a duly promulgated regulation is clearly permissible under decisional law *(see, People v Coe,* 71 NY2d 852; *Silvian v Shang,* 70 AD2d 704; *see also, Boyce Motor Lines v United States,* 342 US 337).

We find no basis upon which 6 NYCRR 201.2 (c), permitting continued operation of a source of air contamination during

the pendency of an application to operate such a source, can be read to authorize commission of the crime of air pollution. First, the regulatory definitions sharply and clearly point to a distinction between the mere operation of an air contamination source and the actual causation or creation of air pollution. An air contaminant is defined as "[a] dust, fume, gas, mist, odor, smoke, vapor, pollen or any combination thereof" (6 NYCRR 200.1 [b]). An air contamination source is "[a]ny apparatus, contrivance or machine capable of causing emission of any air contaminant to the outdoor atmosphere" (6 NYCRR 200.1 [d]). Air pollution is defined, *inter alia,* as "[t]he presence in the outdoor atmosphere of one or more contaminants in quantities, of characteristics and of a duration which are or may be injurious to human, plant or animal life" (6 NYCRR 200.1 [e]). Thus, it is possible to operate an air contamination source, emitting contaminants, without doing so to the extent of creating a condition posing an actual danger to human, plant or animal life, so as to meet the definition of air pollution. Accordingly, the mere authorization under 6 NYCRR 201.2 (c) to operate an air contamination source during the pendency of an application to operate cannot be interpreted to authorize the creation of the far more dangerous condition the regulations define as air pollution.

That 6 NYCRR 201.2 (c) does not license air pollution pending the disposition of an application for a certificate to operate a contamination source is further made clear by 6 NYCRR 200.6 and 211.2, which unambiguously and unmistakably prohibit emissions to the atmosphere to the degree that they actually cause air pollution. In view of the complexities of the area of air pollution control to be regulated, the foregoing regulatory provisions afford reasonable warning to a person of reasonable intelligence that permission to temporarily operate an air contamination source is not permission to cause air pollution. Hence, imposing criminal liability for actually causing air pollution in willful violation of the regulations does not violate due process *(see, People v Cruz,* 48 NY2d 419, 428, *appeal dismissed* 446 US 901; *Silvian v Shang, supra,* at 705; *see also, United States v Chestman,* 947 F2d 551, 564). The language of the statute and regulations spells out what is allowed and what is prohibited with a reasonable degree of certainty, and this is sufficient to overcome any due process objection, because it is *not* "unfair to require that one who deliberately goes perilously close to an area of proscribed

conduct shall take the risk that he may cross the line" *(Boyce Motor Lines v United States, supra,* at 340).

The foregoing reasoning applies a fortiori to require reversal of County Court's dismissal of the first three counts of the indictment. Each of the crimes charged in those counts consists of releasing substantial quantities of "a substance hazardous to public health, safety or the environment". The crimes charged in these counts are defined in ECL article 71, title 27 and the regulations promulgated pursuant thereto, all of which relate to the identification, control and abatement of hazardous wastes. Thus, it would be entirely unreasonable and unjustifiable to read a provision in a part of the regulations dealing with air pollution control as authorizing the release of waste materials injurious to human health, safety or the environment, in violation of an entirely discrete set of statutory and regulatory provisions, all dealing with a different environmental risk. Accordingly, the first four counts of the indictment should be reinstated and remitted to County Court for consideration of defendants' other grounds for dismissal and for trial or other disposition if necessary.

MERCURE, CREW III, MAHONEY and CASEY, JJ., concur.

Ordered that the order is modified, on the law, by reversing so much thereof as dismissed counts one through four of the indictment; said counts reinstated and matter remitted to the County Court of Columbia County for further proceedings not inconsistent with this court's decision; and, as so modified, affirmed.