OPINION OF THE COURT
Bellacosa, J.
An investigation by the Department of Environmental Conservation (DEC) culminated in a Grand Jury indictment against appellant Allied Health Care Products, Inc. (Allied) and two of its employees. It charged five counts: (1) endangering public health, safety or the environment in the second degree (ECL 71-2713 [5]); (2) endangering public health, safety or the environment in the third degree (ECL 71-2712 [2]); (3) endangering public health, safety or the environment in the third degree (ECL 71-2712 [4]); (4) air pollution (ECL 71-2105; 6 NYCRR 211.2); and (5) operating an air contamination source without a certificate (ECL 71-2105; 6 NYCRR 201.2 [b]). The crimes were allegedly committed between March and October 1988, and the indictment was handed up in January 1990.
On defendants’ motions, County Court granted dismissal of all counts on the ground that the conduct alleged as prohibited under the indictment was, in fact, authorized under 6 NYCRR 201.2 (c). The Appellate Division, on the People’s appeal, reinstated counts 1 through 4 and affirmed the dismissal of count 5 (People v Allied Health Care Prods., 174 AD2d 246). A Judge of this Court granted leave to appeal to the defendants, and we now reverse and reinstate the County Court order dismissing the entire indictment.
Defendant-appellant Allied operates a small plant in Stuyvesant Falls, New York, which produces "Baralyme”, a carbon dioxide absorbent composed of barium and lime. In the course of production, a mixture of chemicals, including barium hydroxide, was vented outside the plant.
Prior to March 1988, Allied had never applied for any air pollution control permits and DEC had never inspected the *30 plant. In March 1988, a DEC air pollution inspector conducted an inspection and, one week later, wrote to Allied’s plant manager, defendant-appellant Raymond Ringer, identifying various emission sources. The inspector advised that, as an owner of an "air contamination source (Process and exhaust or ventilation system)”, Allied must obtain a certificate from DEC to operate that source. The inspector enclosed a copy of the portion of the DEC regulations pertaining to air contamination and air pollution (6 NYCRR parts 201, 212) and permit application forms, and asked for a reply within 10 days setting forth Allied’s intended action.
Allied responded in timely fashion, advising that it had hired a consulting engineering firm to assist in processing its application for a certificate to operate and to "design and install a system to correct any deficiencies noted during your inspection o[f] March 8th, 1988”. In late April 1988, the consulting engineering firm submitted on Allied’s behalf an application for a permit to modify Allied’s plant equipment to correct the problems identified in the inspection report. The application lay pending with the DEC for one year. During that time, Allied urged the DEC to expedite the application process and reported that it had installed temporary measures in an effort to control dust emissions. The permit to install the proposed pollution control equipment was eventually granted by the DEC in April 1989 and was valid until May 1990. Ironically, during the same period, other DEC staff were apparently independently preparing criminal charges against Allied for offenses involving the same or closely related conduct allegedly committed from March through October 1988. Their investigation led to the indictment at issue, of which only the first four counts are now pertinent.
The Appellate Division agreed with County Court’s dismissal of count 5 — not at issue before us — on the ground that 6 NYCRR 201.2 (c) either permits the operation of an air contamination source without a permit while a permit to construct or modify the source is pending, or at least plausibly supports an exculpatory interpretation such that "the prosecution’s version cannot be the basis of criminal liability for malum prohibitum conduct without violating due process requirements of fair warning” (People v Allied Health Care Prods., supra, at 250). Nevertheless, the Court was persuaded by the Attorney-General’s argument that 6 NYCRR 201.2 (c) did not also go so far as to authorize "commission of the crime of air pollution” in violation of 6 NYCRR 211.2 as charged in *31 count 4. Central to the Court’s analysis was a refined distinction between emitting air contaminants and "the far more dangerous condition the regulations define as air pollution” (People v Allied Health Care Prods., supra, at 251). That reasoning was then applied a fortiori to counts 1, 2 and 3, since they charged offenses under ECL article 71, title 27, an "entirely discrete set of statutory and regulatory provisions, all dealing with a different environmental risk” (People v Allied Health Care Prods., supra, at 252).
ANALYSIS
Generally, criminal prosecutions must be based on clear and unambiguous regulation or prohibition of conduct such that reasonable persons would be on notice that their conduct is criminally punishable. Count 4 of the indictment charges defendants-appellants with violations of a DEC regulation, 6 NYCRR 211.2. That regulation states in pertinent part, that "[n]o person shall cause or allow emissions of air contaminants to the outdoor atmosphere of such quantity, characteristic or duration which are injurious to human, plant or animal life or to property, or which unreasonably interfere with the comfortable enjoyment of life or property.” Defendants-appellants persuasively argue that despite that general prohibition, 6 NYCRR 201.2 (c) specifically authorized, on a temporary basis, the very conduct that the DEC nevertheless charged as criminal under the circumstances of this case.
To be sure, 6 NYCRR 201.2 (c) speaks to the time period when an application for a "certificate to operate” is pending. Allied’s application in April 1988 was for a "permit to construct” (see, 6 NYCRR 201.2 [a]). However, the printed application form supplied by the DEC for this purpose is patently intended for both applications — an application for a "permit to construct” and an application for a "certificate to operate” an air contamination source. Indeed, the Attorney-General did not argue that distinction before the County Court. On appeal to the Appellate Division, the Attorney-General did urge the distinction between a certificate to operate and a permit to construct, but that Court rejected the argument (see, People v Allied Health Care Prods., 174 AD2d, at 249-250, supra) and that argument is not renewed by the People before us.
Thus, we treat an application for a permit to construct and an application for a certificate to operate as functional equivalents for the purposes of assessing the criminal accusations in *32 this case, and look to 6 NYCRR 201.2 (c) to ascertain the extent of the temporary permission to operate.
The pertinent regulation, 6 NYCRR 201.2 (c), provides that "[a] person who owns or operates an existing air contamination source, but who does not have a certificate to operate” must apply for a certificate "and shall be permitted to continue operation of such source until [that operator] receives written notification that [its] application has been disapproved” (emphasis added). The provision grants permission to continue operation of an existing air contamination source during pendency of an application. While the People recognize that proposition, they nevertheless urge that the authorization to operate an "air contamination source” does not excuse criminally prosecutable conduct causing "air pollution”.
Another section of the regulations, 6 NYCRR 200.1, captioned "Definitions”, serves to place in perspective the People’s overbroad construction and application in this case. Although the dissent does not address these definitions and the concurrence disagrees with our analysis and conclusion concerning them, they form an integral part of the DEC’S mandate with respect to the continued operation of an "air contamination source”. The definitions for "air contaminant”, "air contamination” and "air contamination source or emission source” overlap somewhat. Yet, the Attorney-General argues that the meaning of the term "air contamination source” in section 201.2 is determined exclusively by section 200.1 (d), defining "air contamination source or emission source” as "[a]ny apparatus, contrivance or machine capable of causing emission of any air contaminant to the outdoor atmosphere”. Section 200.1 (b) defines "air contaminant” as "[a] dust, fume, gas, mist, odor, smoke, vapor, pollen or any combination thereof’. Neither makes specific reference to "air pollution”. Thus, we acknowledge some threshold plausibility in the Attorney-General’s argument that the pendent authorization for continued temporary operation of an air contamination source does not authorize "air pollution”. However, the State’s definitional argument is not a total answer in the face of the specific prescription in section 200.1 (c) that "air contamination” includes "[t]he presence in the outdoor atmosphere of one or more air contaminants which contribute or which are likely to contribute to a condition of air pollution.” As is evident, the regulation itself links "air contamination” and "air pollution”. In the context of a criminal prosecution, it is unreasonable to insist that an operator, given permission *33 by the regulatory agency to operate an air contamination source, is barred from looking to the definition of "air contamination” in an effort to understand what conduct is criminally proscribed. By that definition, unless there is at least a likelihood of air pollution, there can be no air contamination. That, however, does not entirely resolve this case.
The circumstances require that we also examine the prohibition of air pollution of 6 NYCRR 211.2 in conjunction with 6 NYCRR 200.6 ("Acceptable ambient air quality”), which places a significant qualification on departmental enforcement powers in any case where emissions "contravene any applicable ambient air quality standard and/or cause air pollution”. In relevant part, the regulation states: "In such cases where contravention occurs or may occur, the commissioner shall specify the degree and/or method of emission control required.” Defendants contend that the Department’s communications with them during the period of the alleged violations must, in logic and in fairness, be construed as the Commissioner’s specification of the "degree and/or method of emission control required”. The People acknowledge on appeal that the Commissioner, consistent with the plain language of 6 NYCRR 200.6, has the authority to allow air pollution in some circumstances. That factor weighs heavily against the viability of the criminal charges lodged in this case.
In March 1988, the DEC inspected the plant and informed defendants that a certificate was required. The following month, after appropriate study, defendants submitted an application to DEC. They then contacted DEC asking for permission to install their proposed emissions control system prior to certification approval, but were informed that no such equipment could be installed until the DEC acted. DEC took no steps, reflected in this record, to expedite action on the application. When the certificate was finally granted a year later, defendants were given an additional year to install the emission controls. To countenance the view under the circumstances of this case that the DEC may, through its criminal enforcement side, prosecute conduct that it is administratively regulating and allowing, would be an unreasonable and unsupportable construction of the relevant statutes and regulations.
With respect to counts 1, 2 and 3, the Attorney-General argues for an analysis independent of that governing count 4. The People urge that the provisions of ECL article 71, title 27, *34 which concerns the enforcement of the Environmental Conservation Law, are "entirely unrelated statutes dealing with a different environmental risk” than that governed by 6 NYCRR chapter III — Air Resources. However, for the purposes of assessing criminality under the circumstances presented here, they are inseparable. ECL 71-2720 directly links the enforcement provisions of that article with licenses, permits or certificates required by New York or the United States. This feature alone effectively intertwines ECL article 71 with 6 NYCRR part 201 and, thus, precludes an analysis which treats the two sources of law as independent and freestanding for the purposes of assessing the availability of criminal responsibility.
Moreover, ECL 71-2720 (1) exempts from the provisions of sections 71-2707 through 71-2714 any person who holds and complies with an applicable New York or Federal license, permit or certificate. Furthermore, ECL 71-2720 (2) stipulates that "no person who meets the requirements for an exemption from a New York state or federal license, permit, certificate or order shall be deemed in violation of sections 71-2707 through 71-2714 for engaging in conduct which would otherwise require such a license, permit, certificate or order.” The Attorney-General recognizes that section 71-2720 relates to permits and certificates governed by 6 NYCRR part 201, but attempts to distinguish that general applicability by urging that the ECL "exemption” refers to only those listed in 6 NYCRR 201.6, entitled "Exemptions”. However, ECL 71-2720, the statute itself, read fairly, contains no language limiting its universe of exemptions to 6 NYCRR 201.6, a regulation. We thus disagree with the view reflected in the dissent that an operator who has been granted permission to operate an air contamination source during the pendency of an application for a permit to construct cannot reasonably be deemed to be a "person who meets the requirements for an exemption from a New York state * * * permit” (ECL 71-2720 [2]) during the pendency of that application. The Legislature granted that unqualified exemption by a statute duly enacted into law. Surely, that is an act upon which citizens may reasonably rely and in relation to which they should not incur criminal responsibility.
This case cannot be resolved on the general axiom of the plain language doctrine as it pertains to the situation under these statutes and regulations. The language of these statutes and regulations, coupled with the particular agency actions *35 exercised in this case, do not authorize a criminal prosecution. The authority to prosecute criminal conduct should not be gauged by what might be arguably forbidden, but by what is understandably legislated in a way that would put citizens on reasonable notice that they are at risk for penal sanction.
Accordingly, the order of the Appellate Division should be reversed and the order of County Court, Columbia County, dismissing the indictment should be reinstated.
Acting Chief Judge Simons (concurring). I concur in the Court’s result and its reasoning on counts 1, 2 and 3. I write separately, however, because I do not agree with its analysis of the relevant definition provisions of 6 NYCRR 200.1 (see, majority opn, at 32-33) or that they foreclose the prosecution of count 4 under these circumstances. I concur in the result, however, because I believe count 4 must be dismissed pursuant to 6 NYCRR 200.6 (majority opn, at 33). As the majority holds, it is unreasonable to read that section as permitting DEC to prosecute defendant criminally for conduct that it has regulated and allowed administratively (see, majority opn, at 33).