OPINION OF THE COURT
Gerald E. Loehr, J.
Defendant by his attorney moves for various relief. The omnibus motion is disposed of as follows:
The defendant stands accused under indictment No. 06-0758 of violating Environmental Conservation Law § 71-2703 (2) (c) (ii). The court has granted the defendant’s motion to inspect and has read the grand jury minutes in camera. The evidence adduced before the grand jury was that in 2002-2003 the defendant was the sole shareholder, sole officer (president) and sole director of Dirtman Enterprises, Inc. At this time, the Eastchester School District was looking to increase the size of its outdoor sports fields. To that end, the School District entered into a written contact with Dirtman. The agreement, which was signed on behalf of Dirtman by defendant as president, provided that Dirtman would provide the School District with Department of Environmental Conservation (DEC) approved “fill” free of charge and would then finish the new sports fields with sod or synthetic turf.*
In order to supply this fill, defendant, as president of Dirt-man, then entered into a contract with Rizzo Associates for the delivery of construction and demolition debris to the School District. Rizzo was the owner of a registered solid waste management facility and had a permit from the New York Department of Environmental Conservation to operate a construction and demolition debris processing facility (a processing facility). Construction and demolition debris (C & D debris) is defined under DEC regulations to be solid waste that is generated from the construction or demolition of buildings and roadways and can include such items as wood, plaster, asphalt, pavement, concrete, brick, rock, soil and glass. As a processing *350 facility, Rizzo would screen the C & D debris, separating the larger items from the soil and gravel which would then be crushed. “Screened fill” referred to C & D debris that had been so processed and “mixed fill” referred to fill that had not.
Neither defendant nor Dirtman nor Rizzo nor the School District had a permit to open or operate a solid waste management facility at Eastchester High School/Middle School. That notwithstanding, commencing on or about January 9, 2003 and through to about July 21, 2003, Rizzo, at defendant’s direction, delivered in excess of 700 cubic yards of mixed and screened fill to the Eastchester High School/Middle School where it was dumped on the sports fields. Defendant was personally present when most of this fill was delivered and he supervised its placement and unloading. Pursuant to the contract between Dirtman and Rizzo, Dirtman was paid in excess of $11,000 for the receipt and disposal of this fill.
Evidence was also introduced that on September 19, 2002 the defendant had been previously convicted of a violation of Environmental Conservation Law § 71-2703 (2) (a).
Environmental Conservation Law § 71-2703 (2)-(5) provide:
“Criminal sanctions, a. Any person who, having any of the culpable mental states defined in section 15.05 of the penal law, shall violate any of the provisions of or who fails to perform any duty imposed by title 3 or 7 of article 27 of this chapter, or any rules and regulations promulgated pursuant thereto, or any final determination or order of the commissioner made pursuant to this title shall be guilty of a violation and, upon conviction thereof, shall be punished by a fine of not less than one thousand dollars nor more than ten thousand dollars per day of violation or by imprisonment for not more than fifteen days or by both such fine and imprisonment.
“b. i. Any person who shall violate paragraph a of this subdivision and thereby causes or attempts to cause the release of more than ten cubic yards of solid waste into the environment shall be guilty of a class B misdemeanor and, upon conviction thereof, shall be punished by a fine of not less than two thousand five hundred dollars per day nor more than fifteen thousand dollars per day of violation, or by imprisonment for a term in accordance with the penal law, or by both such fine and imprisonment.
“ii. Any person who shall violate paragraph a of this *351 subdivision and thereby causes or attempts to cause the release of more than ten cubic yards of solid waste into the environment, after having been convicted of a violation of this subdivision within the preceding five years, shall be guilty of a class A misdemeanor and, upon conviction thereof, shall be punished by a fine of not less than two thousand five hundred dollars per day nor more than twenty-five thousand dollars per day of violation, or by imprisonment for a term in accordance with the penal law, or both such fine and imprisonment.
“c. i. Any person who shall violate paragraph a of this subdivision and thereby causes or attempts to cause the release of more than seventy cubic yards of solid waste into the environment shall be guilty of a class A misdemeanor and, upon conviction thereof, shall be punished by a fine of not less than two thousand five hundred dollars per day and no more than twenty-five thousand dollars per day of violation, or imprisonment for a term in accordance with the penal law, or by both such fine and imprisonment.
“ii. Any person who shall violate paragraph a of this subdivision and thereby causes or attempts to cause the release of more than seventy cubic yards of solid waste into the environment, after having been convicted of a violation of this subdivision within the preceding five years, shall be guilty of a class E felony and, upon conviction thereof, shall be punished by a fine of not less than five thousand dollars per day nor more than fifty thousand dollars per day of violation, or by imprisonment for a term in accordance with the penal law, or both such fine and imprisonment.
“3. Additional sanctions. Any person who violates any of the provisions of, or who fails to perform any duty imposed by title 7 of the article 27, with regard to the construction and operation of facilities for the disposal of construction and demolition debris or any rule or regulation promulgated pursuant thereto, or any term or condition of any certificate or permit issued pursuant thereto or any final determination or order of the commissioner made pursuant to this title shall be hable for a civil penalty not to exceed ten thousand dollars and each day of *352 such deposition shall constitute a separate violation and said civil penalty is in addition to any other fines or penalties which may be applied pursuant to this title.
“4. Definition. As used in this section, the following term shall have the following meaning ‘release’ means any pumping, pouring, emitting, emptying, discharge, deposit, injection, dumping, spilling or placing of a substance.
“5. Penalty assessment criteria. In determining the amount of any fine, penalty or sentence imposed pursuant to this section, the commissioner or the court shall take into consideration any evidence introduced by a party regarding the economic impact of a penalty on a business, the compliance history of a violator, good faith efforts of a violator to comply, any economic benefit obtained from noncompliance, the amount of risk or damage to public health or the environment caused by a violator, whether the violation was procedural in nature, or such other factors as justice may require.”
Environmental Conservation Law § 27-0701 provides:
“1. ‘Solid waste’ means all putrescible and nonputrescible materials or substances discarded or rejected as being spent, useless, worthless or in excess to the owners at the time of such discard or rejection, including but not limited to garbage, refuse, industrial and commercial waste, sludges from air or water control facilities, rubbish, ashes, contained gaseous material, incinerator residue, demolition and construction debris, discarded automobiles and offal but not including sewage and other highly diluted water carried materials or substances and those in gaseous form.
“2. ‘Solid waste management facility’ means any facility employed beyond the initial solid waste collection process including, but not limited to, transfer stations, baling facilities, rail haul or barge haul facilities, processing systems, including resource recovery facilities or other facilities for reducing solid waste volume, sanitary landfills, facilities for the disposal of construction and demolition debris, plants and facilities for compacting, composting or pyrolization of solid wastes, incinerators and other solid waste disposal, reduction or conversion facili *353 ties.
“3. ‘Solid, waste management’ means the purposeful and systematic transportation, storage, processing, recovery and disposal of solid waste.
“4. ‘Resource recovery’ means the separation, extraction and recovery of useable materials, energy or heat from solid waste through source separation, recycling centers or other programs, projects or facilities.”
Environmental Conservation Law § 27-0707 (1) provides:
“1. On and after the effective date of the initial rules and regulations of the department promulgated pursuant to subdivision one of section 27-0703, no person shall commence operation, including site preparation and construction, of a new solid waste management facility until such person has obtained a permit pursuant to this title.”
Thus, the evidence adduced was legally sufficient to establish all the material elements of ECL 71-2703 (2) (c) (ii): that defendant, individually and through Diriman, intentionally operated a new solid waste management facility at Eastchester High School/Middle School knowing that such facility was not licensed by the DEC; that defendant caused over 70 cubic yards of solid waste to be released there; and that defendant had a prior conviction under ECL 71-2703 (2). Further, the Assistant Attorney General correctly charged the grand jury with respect to the applicable law (People v Calbud, Inc., 49 NY2d 389 [1980]) and the proceedings otherwise conformed to the dictates of article 190 of the Criminal Procedure Law (see People v Aarons, 2 NY3d 547 [2004]).
Defendant first moves to dismiss the indictment on the basis that his prior conviction was for only a violation. Defendant argues that in order to be charged with a felony under ECL 71-2703 (2) (c) (ii), he must have been previously convicted of a misdemeanor under ECL 71-2703 (2) (c) (i). As is clear from the statute, however, the word “subdivision” in section 71-2703 (2) (c) (ii) refers to all of ECL 71-2703 (2). Thus, when the statute provides that any person who shall violate paragraph “a” of “this subdivision” after having been convicted of a violation of “this subdivision,” a prior violation of any paragraph of ECL 71-2703 (2) may serve as a predicate conviction. Moreover, should the defendant’s construction — that the phrase “this subdivision” refers only to ECL 71-2703 (2) (c) — be accepted, it *354 would, render the language “paragraph a of this subdivision,” used repeatedly throughout the statute, meaningless as there is no paragraph “a” in ECL 71-2703 (2) (c). It is axiomatic that a statute is to be construed so as to give meaning to all of its parts (McKinney’s Cons Laws of NY, Book 1, Statutes § 98, Comment, at 223-224) and a construction that renders any part thereof meaningless is to be avoided (Matter of Albano v Kirby, 36 NY2d 526 [1975]).
In further support of his interpretation, the defendant quotes the following sentence from the statute’s legislative history: “A second conviction for a release of 70 cubic yards would become an E felony” (Senate Mem in Support of L 1995, ch 508, 1995 McKinney’s Session Laws of NY, at 2200). The court cannot agree that this sentence unequivocally expresses a legislative intention that a felony conviction requires two violations, each involving the release of more than 70 cubic yards. This sentence can just as easily be read — in accordance with the plain meaning of the statute — as requiring a conviction for the release of more than 70 cubic yards where such conviction was the defendant’s second conviction under any subdivision of the statute. In any event, resort to legislative history is only appropriate where a statute is ambiguous (Matter of Allstate Ins. Co. v Libow, 106 AD2d 110 [2d Dept 1984], affd on op below 65 NY2d 807 [1985]). Here, the statute is clear; it is the legislative history that is ambiguous. The court therefore holds that the defendant’s prior conviction for a violation is a sufficient predicate conviction under ECL 71-2703 (2) (c) (ii).
The defendant next moves to dismiss the indictment on the basis that the C & D fill released on the school fields was not solid waste but “recognizable, uncontaminated concrete and concrete products, asphalt pavement, brick, glass, soil and rock placed in commerce for service as a substitute for conventional aggregate” and therefore not subject to the DEC’s licensing requirements. Pursuant to DEC regulations (see 6 NYCRR 360-1.15 [b]), certain materials that would otherwise constitute solid waste are declared not to be solid waste when put to specified “beneficial uses.” One such beneficial use is set forth in 6 NYCRR 360-1.15 (b) (11). Where applicable, that section allows the materials specified therein to be recycled in highway construction as “aggregate” without having to comply with the DEC’s solid waste management licensing restrictions. Inasmuch as the C & D debris here was used as fill and not as highway aggregate, the regulatory exception has no application.
*355 Alternatively, where not directly excepted, the regulation provides that, upon application, the DEC may grant “beneficial use determinations” in specific cases. Such determination, subject to all conditions contained therein, would then exempt the materials from being considered solid waste. Defendant points to the fact that in 1992 the DEC granted the New Paltz Central School District a beneficial use determination (containing various safety conditions) with respect to soils containing residual amounts of pesticides which the school district proposed to use as fill under a soccer field at a newly constructed elementary school. Based thereon, defendant argues that such establishes that C & D debris when used as fill for a school field is exempt from regulation. To the contrary, to the extent this DEC ruling which concerns soil has any relevance with respect to the C & D debris here involved, it is that the School District was required to apply to the DEC for a beneficial use determination before it could release the fill. No such beneficial use determination was sought here or obtained.
Defendant also moves to dismiss the indictment on the assertion that the DEC administratively approved his releasing of the fill at the Eastchester schools and is therefore estopped from prosecuting him. Defendant bases this approval on People v Allied Health Care Prods. (81 NY2d 27 [1993]) and the assertion that DEC enforcement personnel were aware of the dumping during the time period charged in the indictment and took no enforcement action at that time.
In Allied Health Care, a plant operator was charged with various violations of statutes relating to air contamination sources, including operating an air contamination source without a DEC certificate. Upon finding that the defendant had submitted a timely application for a certificate, that the application had lay pending for at least a year and that DEC regulations specifically permitted the conduct alleged in the indictment to continue during the pendency of a certificate application, the Court of Appeals held the People were estopped from prosecuting the defendant (id. at 33, 35; see also Penal Law § 15.20 [2]).
Here, the defendant never applied for a permit. Allied Health Care is therefore inapplicable. Alternatively, while there is authority for the proposition that the People should be estopped from prosecuting someone who has done no more than follow the order or instruction of a law enforcement official (People v Donovan, 53 Misc 2d 687 [1967]), there is no evidence that the *356 DEC ordered, instructed or specifically authorized the defendant to release the fill at the Eastchester schools.
Defendant moves to dismiss the indictment on the basis that he is exempt from prosecution by virtue of ECL 71-2720 (3). That section provides an exemption from prosecution for municipal employees who may have violated ECL 71-2707 through 71-2714. Inasmuch as defendant has been indicted for violating ECL 71-2703 (2), the exemption is irrelevant.
Defendant moves to dismiss on the basis that while Dirtman may have violated the charged crime, there was insufficient evidence that defendant individually committed the charged crime. Penal Law § 20.25 provides: “A person is criminally liable for conduct constituting an offense which he performs or causes to be performed in the name of or in behalf of a corporation to the same extent as if such conduct were performed in his own name or behalf.” Thus, while criminal liability generally cannot be vicarious (see People v Byrne, 77 NY2d 460 [1991]), where a person personally commits all the elements of a crime, he is criminally liable therefor notwithstanding that he performed the conduct in a corporate capacity or on behalf of a corporation (Penal Law § 20.25). Here, the evidence was that defendant personally contracted with Rizzo and with the School District to have in excess of 70 cubic yards of C & D debris fill delivered to the Eastchester High School/Middle School, that he personally saw to its unloading and placement, and that he personally had a prior conviction under ECL 71-2703 (2). The evidence was also legally sufficient under Penal Law § 15.15: it established that the defendant intentionally released what he knew to be C & D debris fill at the Eastchester schools knowing the site did not have a permit to receive such fill (People v M&H Used Auto Parts & Cars, Inc., 22 AD3d 135 [2d Dept 2005]). Moreover, while not an element of the crime, defendant must have known he needed a permit by virtue of his prior conviction (cf. Penal Law § 15.20 [2] [mistake of law is no defense to criminal liability]).
Defendant also moves to dismiss on the basis that ECL 71-2703 (2) (c) (ii) is unconstitutionally vague. A statute is unconstitutionally vague if it fails to provide a person of ordinary intelligence with a reasonable opportunity to know what is prohibited, and it is written in a manner that permits or encourages arbitrary or discriminatory enforcement (Ulster Home Care v Vacco, 96 NY2d 505, 508 [2001]). Under the first prong of the vagueness test, a court must determine *357 whether the statute provides “sufficient notice of what conduct is prohibited” (People v Bright, 71 NY2d 376, 382 [1988]). Under the second prong, the court must determine whether the statue is written in such a manner so “as to permit or encourage arbitrary and discriminatory enforcement” (id.).
Here, ECL 71-2703 (2) (c) (ii) and the statutes referred to therein prohibit the release — defined to include dumping — of solid waste — defined as any solid which has been discarded— into the environment at any spot not licensed to receive it. Thus, the statute delineates specific conduct easily understood and avoided by the innocent minded (see People v Nelson, 69 NY2d 302, 307 [1987]). Nor does it encourage arbitrary or discriminatory application. The law, easily followed by most citizens of this state, provides objective criteria which must be observed by law enforcement personnel prior to arrest and is not dependent on subjective conclusions of a complainant or arresting officer (cf. People v Bright, 71 NY2d 376, 382 [1988]).
Finally, the defendant moves to dismiss in the interests of justice. The court has considered the factors specified in CPL 210.40 (1) and finds no basis to dismiss the indictment. The evidence before the grand jury showed that the defendant intentionally and knowingly dumped hundreds of cubic yards of solid waste for a profit at Eastchester High School/Middle School, turning it into an unlicensed landfill which has required a DEC supervised cleanup. Thus, this is no technical violation of the law but a serious offense with serious repercussions. Particularly in light of the fact that this is the defendant’s second charge under this statute, an interest of justice dismissal would clearly be inappropriate and would have a negative impact on the confidence of the public in the criminal justice system.
For the foregoing reasons, the motion to dismiss the indictment is denied. The defendant’s motion for discovery and inspection is granted to the extent of the information supplied in the People’s responding papers and in the bill of particulars and consented-to discovery. The defendant may move for additional discovery upon a specific showing of necessity for such material (People v Colavito, 87 NY2d 423 [1996]; Matter of Pirro v LaCava, 230 AD2d 909 [2d Dept 1996], lv denied 89 NY2d 813 [1997]). The People are reminded of their continuing duty to *358 disclose exculpatory material and specifically their obligations under Brady v Maryland (373 US 83 [1963]) and Giglio v United States (405 US 150 [1972]).
The motion is otherwise denied.

 This type of arrangement became known in Westchester County as a “fill for fields” project.